Elizabeth **BERNEL**, Appellant–Petitioner,

v.

Jeffrey A. **BERNEL**, Appellee–Respondent.

No. 46A03–0911–CV–511.

Court of Appeals of Indiana.

July 29, 2010.

Douglas L. Biege, Sallwasser and McCain, LLP, LaPorte, IN, Attorney for Appellant.

Kristina J. Jacobucci, Mark L. Phillips, Newby, Lewis, Kaminski & Jones, LLP, LaPorte, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Elizabeth Bernel ("Wife") appeals the dissolution court's denial of her motion to enforce settlement agreement and request for injunctive relief in this post-dissolution action against her former husband, Jeffrey Bernel ("Husband"). Wife presents a single dispositive issue for our review, which we restate as whether the dissolution court erred when it denied her motion to enforce the parties' settlement agreement. We hold that Husband breached the settlement agreement and that, while the dissolution court did not abuse its discretion when it denied Wife injunctive relief, Wife is entitled to a money judgment, including pre-judgment interest, for her damages.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

Husband and Wife were married when Wife filed a petition for dissolution of the

marriage in 2006. The parties negotiated a Settlement Agreement ("the Agreement"), which the dissolution court approved and incorporated into the final decree, entered on April 1, 2008. The Agreement included the following relevant provisions:

14. Wife shall receive Nine Hundred Fifty Thousand Dollars ($950,000.00) in marketable securities from the JP Morgan Private Bank account, account ending 9006. Wife shall select the securities she is to receive from the JP Morgan Private Bank portfolio. Any and all remaining securities maintained through JP Morgan Private Bank, account ending 9006, shall be Husband's sole and separate property.

\* \* \*

18. The parties agree to execute any and all documents necessary to effectuate the terms of these transfers or assignments within sixty (60) days of the entry of the Summary Dissolution Decree in this matter.

\* \* \*

28. Husband shall assume and timely satisfy any and all debt affiliated with the JP Morgan Line of Credit, account

ending in 9006 and shall hold Wife harmless therefrom.

Appellant's App. at 103, 105.

When Wife attempted to transfer securities from the JP Morgan Private Bank account designated in Paragraph 14 of the Agreement ("Account 9006"), her requests were denied and she was told that no such transfer was possible because the account secured a line of credit. Account 9006 and the line of credit were in Husband's name and under Husband's control. Husband knew about the line of credit, but at the time that he signed the Agreement, he believed that he could collateralize the line of credit using another JP Morgan Private Bank account ("Mosaic fund account"). Husband soon determined, however, that the line of credit could only be secured by Account 9006.[1]

██ Husband had the means to pay off the line of credit, which would have enabled Wife to transfer securities from Account 9006, but Husband did not.[2] Accordingly, on September 15, 2008, Wife filed a Motion to Enforce Settlement Agreement and Request for Injunctive Relief. During a hearing on that Motion on May 6, 2009, the dissolution court heard evidence that as a result of a decline in the stock market, the securities held in Ac-

---

1. The parties dispute whether Wife knew or should have known through discovery that Account 9006 secured the JP Morgan line of credit. The dissolution court concluded that the exercise of due diligence in the discovery process should have uncovered the existence of the lien, and we agree. But the dissolution court also concluded that "each party thought the marketable securities could be transferred at the time the agreement was entered," and, as discussed below, the JP Morgan lien is not identified as an exception to the parties' stated intent to complete the transfers of investments and securities under the terms of the Agreement within sixty (60) days of the entry of the Decree.

2. In his brief on appeal, Husband states that since the time of the hearing on Wife's motion to enforce the settlement agreement, he has satisfied the JP Morgan line of credit. But there was no such evidence presented to the dissolution court. A trial court can decide the issues based only upon that evidence which is properly before the court and in the record, and we are bound by that record on appeal. *Chesterfield Mgmt., Inc. v. Cook*, 655 N.E.2d 98, 101 (Ind.Ct.App.1995). Wife filed a motion to strike from the appellate record a copy of a JP Morgan statement Husband included in his appendix on appeal and all references to that statement in Husband's brief. We grant Wife's motion to strike by separate order.

count 9006, which had been worth $1,029,051.87 when the decree was entered on April 1, 2008, were only worth $736,540.31 a year later, on March 31, 2009. Accordingly, at the time of the hearing, the value of the securities held in Account 9006 was insufficient to satisfy the $950,000 awarded to Wife in Paragraph 14 of the Agreement.

The dissolution court denied Wife's motion to enforce the Agreement and request for injunctive relief in its entirety, finding and concluding in relevant part as follows: [3]

### Findings of Fact

\* \* \*

8. In Paragraph 14 of the Parties' agreement, Wife was to "receive Nine Hundred Fifty Thousand Dollars ($950,-000.00) in marketable securities from the JP Morgan Private Bank account, account ending 9006" and was to select the particular securities she was going to receive from the portfolio.

\* \* \*

11. Wife testified that she contacted JP Morgan Private Bank in an attempt to transfer the securities from the account ending in 9006 as contemplated in Paragraph 14 of the Property Settlement Agreement, however, all of her requests were denied.

12. Wife was unable to transfer the securities to her account as contemplated because there was a pre-existing line of credit associated with the account ending in 9006 that precluded the transfer of the marketable securities.

13. Each party testified that when the Property Settlement Agreement was executed that they were under the belief that $950,000 in marketable securities

could be transferred to Wife as contemplated in Paragraph 14 of their agreement.

14. Husband testified that at the time of the entry of the parties' property settlement agreement that although he was aware of an outstanding line of credit, he was under the belief that sufficient funds existed in the JP Morgan Private Bank account to collateralize the line of credit.

\* \* \*

24. Wife also argues that Husband failed to "timely" satisfy the JP Morgan Line of Credit, thereby inhibiting or causing Wife's inability to choose and transfer the $950,000.00 in marketable securities as outlined in the property settlement agreement.

25. According to the documents submitted to the court, at the time of the entry of the Verified Property Settlement Agreement, the JP Morgan Private Bank line of credit had a balance of $527,301.28. As of March 31, 2009, the JP Morgan Private Bank line of credit had a balance of $578,327.74. The total increase on the ... line of credit from April 2008 through March 2009 was $51,026.46.

\* \* \*

28. Currently before the court is a Motion to Enforce Settlement Agreement and Request for Injunctive Relief which was filed by Wife on or about September 12, 2008, requesting the following relief:

A. Husband be precluded from borrowing any further monies from the line of credit with JP Morgan account ending in 9006;

B. Husband either refinance the line of credit or cash in any and all other securities in order to satisfy the out-

---

**3.** The parties submitted proposed findings and conclusions to the dissolution court.

standing balance of the line of credit in an amount sufficient for Wife to receive a total of $950,000 within thirty (30) days of the date of the court's hearing in this matter;

C. That the value of all investments remaining in the [Mosaic funds account] be released immediately to Wife;

D. Husband be ordered to pay interest at the statutory rate from the date of the entry of the Verified Property Settlement Agreement through the date of transfer; and

E. That the Husband be ordered to pay attorney fees in the amount incurred by Wife within fifteen (15) days from the date of hearing in this matter.

29. No provisions in the parties' property settlement agreement that was filed with this Court on April 1, 2008, specify when Wife was to receive the $950,000.00 in marketable securities from the JP Morgan account ending in 9006.

\* \* \*

*Conclusions of Law*

\* \* \*

7. The parties' agreement specifically and expressly states that Wife shall have the right to receive $950,000.00 in marketable securities from JP Morgan Private Bank account ending in 9006.

\* \* \*

9. The terms of the parties' property settlement agreement did not specify a deadline or exact time in which Wife

would receive the $950,000.00 in marketable securities from [Account 9006].

10. As Wife has not filed a motion to modify the parties' property settlement agreement, the question before the court is whether Husband is in any way refusing to comply with the agreement or indirectly acting to cause her to be unable to receive the $950,000.00 in marketable securities from account 9006.

11. Wife's inability to receive $950,000.00 in marketable securities is directly attributable to the existence of the JP Morgan Private Bank line of credit lien and the First Source Bank lien [4] that were in existence prior to the entry of the parties' property settlement agreement.

\* \* \*

22. The next question is whether Husband has failed to timely remove the liens and pay off the line of credit. The exact language was that "Husband shall assume and timely satisfy any and all debt affiliated with the JP Morgan Line of Credit, account ending in 9006 and shall hold Wife Harmless therefrom."

23. No evidence or authority was presented to the court from either party as to what a "timely" basis would be. Wife would have the court believe that Husband did not timely satisfy the lien and all debt because the debt is interfering with Wife's ability to access the marketable securities in account 9006. Husband would have the court believe that he did timely satisfy the lien because the lien or debt created by the line of credit is not in default.

24. Th[e] parties' property settlement agreement was incorporated into a decree of marriage dissolution and is a

4. The record reveals that JP Morgan granted 1st Source Bank a security interest in Account 9006 pursuant to an agreement dated June 12, 2006. But the nature of that security interest is not relevant to the issues on appeal. For ease of discussion, we refer to the liens collectively as the JP Morgan line of credit.

binding contract. The parties' property settlement agreement does not fix a time for the performance of the parties' obligations. When a contract does not fix a time for the performance of contractual obligations, the law presumes the time for performance to be a "reasonable" time. *Harrison v. Thomas,* 761 N.E.2d 816 (2002). The determination of what constitutes a reasonable time depends on the subject matter of the contract, the circumstances attending the performance of the contract, and the situation of the parties of the contract.

\* \* \*

29. Wife has not shown that Husband has violated the agreement by not timely satisfying the liens and holding wife harmless. No evidence was presented that either First Source or JP Morgan has requested that Wife or Husband pay or fully satisfy said liens.

\* \* \*

35. The testimony and evidence before the court was that, notwithstanding the increase in the line of credit, insufficient funds existed in the account to satisfy Paragraph 14 of the parties' property settlement agreement.

\* \* \*

38. Wife is requesting that Husband be compelled to refinance other accounts to satisfy the balance of the line of credit in an amount sufficient for Wife to receive $950,000.00 within thirty (30) days.

39. No provisions of the [Agreement] require that Husband take steps to refinance or otherwise satisfy the outstanding balance on the JP Morgan Private Bank line of credit.

\* \* \*

41. Husband's inability or refusal to satisfy the entire balance on the JP Morgan Private Bank line of credit does not constitute a violation of the parties' property settlement agreement.

\* \* \*

44. As stated previously, the request or petition before the court is to enforce the terms of the parties' property settlement agreement. Wife's request that essentially certain accounts be liquidated and added to 9006 would be a modification of the parties' property settlement agreement. Therefore, Wife's request that Husband liquidate other assets to pay down the line of credit is hereby denied.

45. Wife has requested that this court order that Husband transfer all of the value of the investments from [the Mosaic funds account] to her to satisfy the amount due from account 9006.

46. The terms of the parties' property settlement agreement were specific and clear. Paragraph 14 specifically states that Wife was to receive $950,000.00 from one particular account, the JP Morgan Private Bank account ending in 9006.

\* \* \*

48. To turn over accounts to Wife that were not part of the original agreement would be a modification of the parties' original agreement, therefore the request to turn over remaining funds in [the Mosaic funds account] is hereby denied.

\* \* \*

58. Nothing in this Order is to be construed or interpreted as denying Wife the right to receive $950,000.00 in marketable securities from the JP Morgan Private Bank account ending in 9006.

Appellant's App. at 6–21. Thus, the dissolution court denied relief and held, in ef-

**680**

fect, that the $950,000 award was unenforceable, at least for the time being.

## DISCUSSION AND DECISION

In *In re Estate of Compton,* 919 N.E.2d 1181, 1185 (Ind.Ct.App.2010), *trans. denied,* we set out the applicable standard of review where, as here, a party requests that the trial court issue findings and conclusions:

[T]he trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. In our review, we first consider whether the evidence supports the factual findings. Second, we consider whether the findings support the judgment. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it relies on an incorrect legal standard. We give due regard to the trial court's ability to assess the credibility of witnesses. Although we defer substantially to findings of fact, we do not do so to conclusions of law. We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment.

(Citations omitted.)

■ Wife maintains that the trial court erred in its findings and conclusions on the issue of whether Husband was timely in fulfilling his obligation to satisfy the liens against Account 9006 and to hold Wife harmless under the terms of the Agreement. In particular, the dissolution court found that:

Wife was unable to transfer the securities to her account as contemplated because there was a pre-existing line of credit associated with the account ending in 9006 that precluded the transfer of the marketable securities.

Appellant's App. at 7. And the dissolution court concluded that:

Wife's inability to receive $950,000 in marketable securities is directly attributable to the existence of the JP Morgan Private Bank line of credit lien and the First Source Bank lien that were in existence prior to the entry of the parties' property settlement agreement.

*Id.* at 13. Nevertheless, the court concluded that while it was Husband's obligation "to assume and timely satisfy any and all debt affiliated with the JP Morgan Line of Credit" and to "hold Wife harmless therefrom," the "property settlement agreement does not fix a time for the performance of the parties' obligations" and, therefore, the law presumes the time for performance to be a "reasonable time." *Id.* at 15–16, 105 (quotations omitted). The court then concluded that "Wife has not shown that Husband has violated the agreement by not timely satisfying the liens and holding Wife harmless" and that "Husband's inability or refusal to satisfy the entire balance on the JP Morgan Private Bank line of credit does not constitute a violation of the parties' property settlement agreement." *Id.* at 17–18.

It is undisputed that Husband is responsible for the JP Morgan Line of Credit and that the line of credit is a lien on Account 9006. And the trial court found that the lien precluded Wife from transferring marketable securities from the account to her name as provided in Paragraph 14 of the Agreement. Neither the evidence nor the findings supports the trial court's conclusions that Husband was not untimely and that he has not failed to hold Wife harmless. Thus, the judgment that Husband is not in breach of the Agreement and that Wife is not entitled to relief is clearly erroneous.

First, the court found incorrectly that the Agreement did not fix the time for performance. The court found that no provisions in the Agreement specify when Wife was to receive the marketable securities from the JP Morgan account. To the contrary, the Agreement expressly provides, under the section entitled "Investments and Securities," that, "[t]he parties agree to execute any and all documents necessary to effectuate the terms of these transfers or assignments within sixty (60) days of the entry of the Summary Dissolution Decree in this matter." *Id.* at 103. The parties agreed that, at least with respect to the transfer of investments and securities, their Agreement would be fully executed within sixty days. Thus, the parties designated the time for performance, and the "reasonable time" rule relied upon by the court is inapposite.

Second, the court found that the term "assume and timely satisfy any and all debt" means only that Husband not be in default on the debt affiliated with the JP Morgan line of credit. *See id.* at 17. Husband maintained and the court agreed that since there was no evidence that JP Morgan required Husband to pay off the line of credit, Husband was not in default on that debt, and he had not violated the Agreement. But the proper question is not whether Husband was in default of his obligation to JP Morgan but whether he was in default of his obligation to Wife under the Agreement. In effect, the court concluded that, because Husband's JP Morgan line of credit was current, he had timely "satisfied" the debt to JP Morgan Bank, notwithstanding that the debt encumbered Account 9006, Wife was denied access to her award, and Wife would be harmed for the indefinite future.

This interpretation of the term "assume and timely satisfy any and all debt" is untenable. The Agreement does not state that Husband will have met his obligation to Wife under this provision merely by not being in default on the JP Morgan debt. The Agreement states that Husband will assume and satisfy the debt and hold Wife harmless therefrom. The satisfaction of a debt means to discharge or secure release of the debt as the case may be. *See* Black's Law Dictionary 1343 (7th ed. 1999). Husband's obligation to hold Wife harmless from the JP Morgan line of credit resolves any doubt about the meaning of this provision. The Agreement does not require that Husband pay off the line of credit but it does require that he secure release of that debt as an encumbrance on Account 9006. Thus, the dissolution court erred when it concluded that the Agreement did not require Husband "to refinance or otherwise satisfy the outstanding balance on the JP Morgan Bank line of credit" as necessary to remove the lien of that debt from the account. Appellant's App. at 18.

 Appellate review under Trial Rule 52(A) is interwoven with the applicable substantive law. Here, Wife's contention that the dissolution court erred when it denied her motion to enforce the Agreement implicates both the Dissolution of Marriage Act and the common law of contracts. In *Shorter v. Shorter*, 851 N.E.2d 378, 382–83 (Ind.Ct.App.2006), we described our approach when interpreting a settlement agreement in a dissolution as follows:

> When dissolving a marriage, the parties are free to draft their own settlement agreement. Such agreements are contractual in nature and become binding upon the parties when the dissolution court merges and incorporates that agreement into the divorce decree. When interpreting these agreements, we apply the general rules applicable to the construction of contracts. That is, un-

less the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. Terms are not ambiguous merely because the parties disagree as to the proper interpretation of those terms. Our Supreme Court has determined that the dissolution court that enters a property settlement agreement is in the best position to resolve questions of interpretation and enforcement of that agreement and thus retain jurisdiction to interpret the terms of their property settlement agreements and to enforce them. Nevertheless, *in essence this remains an exercise in the construction of the terms of a written contract, which is a pure question of law, so our standard of review is de novo.*

(Citations omitted, emphasis added.) If the language of a contract is ambiguous, extrinsic evidence may be considered. *Sunburst Chemical, LLC v. Acorn Dist., Inc.,* 922 N.E.2d 652, 653 (Ind.Ct.App. 2010). When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Id.* at 653–54. And, again, our standard of review is de novo.

█ In the Agreement, the parties did not designate a valuation date for the award. Because of market fluctuations, that date is significant. The Agreement does not state whether Wife is entitled to $950,000 in marketable securities valued on April 1, 2008, the date of the Agreement and the date the Summary Dissolution Decree was entered, or on the actual date of transfer. Thus, the Agreement is ambiguous on the valuation date.

To resolve this ambiguity we look outside the four corners of the contract to determine the parties' intent. *See Sunburst Chemical,* 922 N.E.2d at 653. The testimony of the parties at the hearing on Wife's motion indicates that they do not dispute the appropriate valuation date. Husband conceded that Wife is currently entitled to $950,000 in marketable securities. And Husband did not contend that Wife is entitled to an award of less than $950,000 because of a decline in the stock market.

█ Absent express language stating otherwise, both parties to a dissolution settlement agreement are to share in the rewards of growth and the risks of losses associated with an investment plan that is a marital asset. *See Case v. Case,* 794 N.E.2d 514, 518 (Ind.Ct.App.2003) (citing *Niccum v. Niccum,* 734 N.E.2d 637, 640 (Ind.Ct.App.2000)). Here, Paragraph 14 of the Agreement does not award a percentage or fractional interest in the account to Wife but provides for payment of a sum certain to Wife from Husband's JP Morgan Account 9006. The Agreement also provides that Husband shall retain "all remaining securities" as his sole and separate property. Appellant's App. at 103. In other words, Wife's award under this paragraph is fixed. Unlike in *Niccum* or *Case,* the Agreement does not contemplate that both parties would share in the risks and rewards associated with the account. Wife's interest is not chargeable with the risks of any losses that may occur from the account, nor is Wife entitled to any appreciation or growth in the value of the account. Husband, however, is both entitled to any growth in the value of the account above Wife's $950,000 interest and chargeable with any reduction in the value of the account below that amount. Thus, Husband testified accurately that Wife is entitled to $950,000 rather than a reduced

sum based on a decline in the account's value.

The dissolution court declined to enforce the Agreement on the grounds that "the provisions of the parties' property settlement agreement are very specific as to how much Wife will receive and from which account she will receive them...." *Id.* at 18. And, as we have already noted, the court concluded that Husband's "inability or refusal to satisfy the entire balance of the JP Morgan Private Bank line of credit does not constitute a violation of the parties' property settlement agreement." *Id.* Finally, the court concluded that nothing in its order "is to be construed or interpreted as denying Wife the right to receive $950,000 in marketable securities from the JP Morgan Private Bank account ending in 9006." *Id.* at 21.

Thus, the dissolution court declined to enforce Wife's award on essentially two grounds. First, the court held that Husband had not violated the Agreement when he was either unable or refused to satisfy the JP Morgan lien. We have determined, however, that the Agreement requires that Husband secure a release of the JP Morgan lien within sixty (60) days following entry of the Summary Dissolution Decree. And the dissolution court's finding that the JP Morgan line of credit "precluded the transfer of marketable securities" and its conclusion that Wife's inability to receive the marketable securities is "directly attributable" to the lien of Husband's JP Morgan line of credit demonstrate conclusively that Husband breached the Agreement, that Husband did not hold Wife harmless, and that Wife has been damaged by Husband's breach. *See* Appellant's App. at 7, 13.

Second, the court declined to enforce Wife's award, in part, because "unprecedented losses" in the stock market had reduced the value of the securities held in JP Morgan Account 9006 to substantially less than the award. The court's reliance on this circumstance suggests that, without specifically stating as much, the court applied the general rule that impossibility of performance excuses breach of an executory contract. *See Family Video Movie Club, Inc. v. Home Folks, Inc.,* 827 N.E.2d 582, 586 n. 1 (Ind.Ct.App.2005). But impossibility of performance is an affirmative defense, which Husband did not assert and which is, therefore, waived. In any event, we have determined that Wife was awarded a sum certain and that her $950,000 award was not subject to a reduction in the market value of the securities held in the account.

Wife asked the court for an order requiring that "Husband either refinance the line of credit or cash in any and all other securities in order to satisfy the outstanding balance of the line of credit in an amount sufficient for Wife to receive a total of $950,000," but the court declined. Our review on appeal of a trial court's decision to grant or deny injunctive relief is limited to a determination of whether the trial court abused its discretion. *See Crossmann Communities, Inc. v. Dean,* 767 N.E.2d 1035, 1040 (Ind.Ct.App.2002). The dissolution court did not abuse its discretion when it declined Wife's request for injunctive relief. Specific performance is an extraordinary remedy, *Kesler v. Marshall,* 792 N.E.2d 893, 896 (Ind.Ct.App. 2003), and Wife's remedy at law is adequate, *see Bonewitz v. Parker,* 912 N.E.2d 378, 384 (Ind.Ct.App.2009) (holding "injunctive relief is available only if the remedy at law is inadequate"), *trans. denied.* In this case, money damages are an appropriate and adequate remedy for Husband's breach. *See* Ind. Appellate Rule 66(C)(4) and (10) (court on appeal may order entry of judgment of damages and any other appropriate relief).

A money judgment is within the dissolution court's authority to enforce the settlement agreement where, as here, the findings establish that Husband interfered with Wife's access to a marital property award and the award was for a sum certain and not subject to a decline in the market value of securities. Accordingly, we reverse and remand with instructions that the dissolution court enter a money judgment in the amount of $950,000 for Wife and against Husband. Consistent with Paragraph 14 of the Agreement, the judgment shall provide that Wife's first recourse shall be to the securities in Account 9006. The judgment shall further provide that if Wife is denied immediate access to the account to transfer securities or if the account value is insufficient to satisfy the judgment, then Wife may collect the deficiency, if any, in the manner provided for the collection of judgments under Trial Rule 69, including execution and proceedings supplemental to execution.

Wife also requested interest in her motion to enforce. An award of prejudgment interest is founded upon the theory that there has been a deprivation of the plaintiff's use of money or its equivalent and that unless interest is added, the plaintiff cannot be fully compensated for the loss suffered. *Bank One, Natl. Ass'n v. Surber*, 899 N.E.2d 693, 705 (Ind.Ct. App.2009), *trans. denied.* Prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation. *Id.* Damages in the form of prejudgment interest are warranted in a contract case if the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation. *Id.* Here, Husband breached the Agreement when he did not make $950,000 in securities available for transfer to Wife from Account 9006 within sixty days. We hold that Wife shall be awarded prejudgment interest at the statutory rate from the date of Husband's breach beginning sixty days after entry of the Summary Dissolution Decree.

Finally, the Agreement expressly states that "[i]f further proceedings are necessary to enforce the provisions of this ... Agreement, the prevailing party should be entitled to recover its attorney's fees and expenses from the non-prevailing party." Appellant's App. at 107. Accordingly, Wife is entitled to attorney's fees. On remand, the dissolution court shall determine a reasonable amount of fees for her attorney's services rendered in connection with these post-dissolution proceedings in the dissolution court and on appeal.

Affirmed in part, reversed in part, and remanded with instructions.

VAIDIK and BROWN, JJ., concur.