**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 19 2012, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID M. LUTZ**
David M. Lutz LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**KARL J. VERACCO**
**LARRY L. BARNARD**
Carson Boxberger LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK WILEY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1107-EX-593 |
| | ) | |
| MIDWEST POULTRY SERVICES, LP., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE WORKER'S COMPENSATION BOARD OF INDIANA
Members of the Indiana Worker's Compensation Board
Cause No. C-180134

**March 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Mark Wiley sustained injuries in the course of his employment with Midwest Poultry Services, LP. After the Worker's Compensation Board of Indiana (the "Board") approved an agreement between Wiley and Midwest regarding Wiley's permanent disability benefits and a second agreement regarding other outstanding and pending issues, Wiley filed a motion to reinstate his application for adjustment of claim with the Board. After a single-officer hearing, the Board rendered a decision, and Wiley filed for review by the Full Board. The Full Board affirmed in part and reversed in part.

Wiley now appeals, raising three issues for our review, which we restate as: 1) whether the Full Board erred by not issuing findings of fact; 2) whether the Worker's Compensation Act entitles Wiley to reimbursement for the cost of repairs to his original motorized wheelchair; and 3) whether Wiley waived any right to reimbursement for repairs to his original motorized wheelchair in the Parties' Agreement Regarding All Outstanding and Pending Issues. Midwest cross-appeals, raising one issue for our review: whether the Full Board erred in concluding that Wiley is entitled to receive payment for repairs to the chair lift on his truck. Concluding the Full Board should have issued findings of fact but we need not remand because the issues presented are either indisputable based on the evidence or questions of law, and Wiley is entitled to reimbursement for the cost of repairs to his wheelchair and chair lift under the Worker's Compensation Act and did not waive his claim for recovery, we reverse in part, affirm in part, and remand.

Facts and Procedural History

In April 2004, Wiley sustained injuries resulting from his employment with Midwest. While attempting to weld pipes together, Wiley lost his balance and fell approximately fifteen feet. Wiley suffered a spinal cord injury and is now paralyzed from the waist down. Midwest, via its worker's compensation insurance carrier, treated Wiley's injuries as work-related and paid Wiley temporary total disability benefits at the rate of $588.00 per week for over 109 weeks from April 2004 through May 2006. The total temporary disability benefits awarded was $64,482.60. As a result of his paralysis, Wiley is not able to walk. Because Wiley lives in a rural area, Midwest provided Wiley with a Journeyman scooter, a motorized wheelchair specially designed to handle rough and uneven terrain. Midwest also supplied other equipment, including a hydraulic chair lift for Wiley's pick-up truck.

In February 2009, the Board approved an agreement between Wiley and Midwest regarding the payment of permanent total disability benefits. Midwest agreed to pay retroactive benefits for the period from May 2006 through January 2009 in the amount of $83,075.99, and it agreed to begin paying $1,176.00 every two weeks for an additional 249 weeks. Sometime thereafter, Wiley filed an application for adjustment of claim with the Board. In June 2010, the Board approved a second agreement between Wiley and Midwest regarding all outstanding and pending issues. The second agreement included, in relevant part:

> 4. The parties have agreed to settle and resolve all outstanding and pending issues as follows:

A. [Midwest] shall authorize and provide to [Wiley] a bed lift as prescribed by Dr. Jody Neer on or about January 14, 2009. [Midwest] agrees to authorize Life Essentials to provide such bed lift to [Wiley];

* * *

C. [Midwest] shall pay to [Wiley] the sum of $3,000 in exchange for [Wiley] waiving and releasing his pending claim for the cost of a replacement scooter at the Medicare-approved rate of reimbursement. [Wiley] may choose to apply such payment to the purchase [sic] a more rugged and durable scooter;

D. [Wiley] agrees to forever waive and release any and all claims he may have for the repair to his current pickup truck and topper which was originally paid for by [Midwest]. [Wiley] agrees that any and all costs relative to the present damage to his pickup truck caused by the hydraulic lift shall be paid for solely by [Wiley] and no further claims shall be made of [Midwest] or its worker's compensation insurance carrier for such items;

* * *

5. In addition to the foregoing terms, the parties hereto further agree that this Application No. C-180134 shall be dismissed, without prejudice.

Appellant's Appendix at 61-62. The Board approved the agreement, and pursuant to provision 5 the Board dismissed Wiley's application for adjustment of claim with the Board.

In November 2010, Wiley filed a motion to reinstate his application. A single member of the Board held a hearing on Wiley's motion. The evidence presented included Wiley's testimony, invoices showing the costs of repairing Wiley's motorized wheelchair and chair lift, and a transcript of the deposition of Dr. Mark V. Reecer, who examined Wiley on two different occasions, along with a portion of Wiley's medical records offered during the deposition. Dr. Reecer stated Wiley's spinal cord injury resulted in paraplegia and bowel and bladder problems. He also stated Wiley's original motorized wheelchair, which was designed to handle uneven and rough terrain, is necessary for Wiley to get around in the rural area where he lives, and a chair lift is necessary in his vehicle to enable him to get in and out of the vehicle. Dr. Reecer determined Wiley's permanent partial impairment rating is 89%.

4

The single member Board issued an order without findings of fact, declining to enter an award of additional payments to Wiley for costs arising from his wheelchair or chair lift.

After Wiley filed an application for review by the Full Board, the Full Board conducted a hearing and "having reviewed its file and the evidence herein, and having heard arguments of counsel" issued an order whereby it affirmed in part and reversed in part the single-member Board. Id. at 10. Specifically, the Full Board stated, in relevant part:

> 1. The Board has reviewed the parties' agreement of June 4, 2010 with respect to the provision of certain disputed supplies and equipment.
> 2. The Full Board finds and concludes that [Wiley] is entitled to payment of or reimbursement for the disputed expenses claimed with respect to the chair lift on his pickup truck.
> 3. The Full Board finds and concludes that at this time, [Wiley] is not entitled to the disputed payments claimed with respect to one of his scooters.

Id.

Wiley now appeals, and Midwest cross-appeals.

### Discussion and Decision

### I. Standard of Review

When reviewing an appeal from a decision of the Worker's Compensation Board, this court is generally bound by the Board's findings of fact and may consider only errors in the Board's conclusions of law. Niegos v. ArcelorMittal Burns Harbor LLC, 940 N.E.2d 323, 325 (Ind. Ct. App. 2010), trans. denied. When questions of law are presented, however, the standard of review is de novo. Stytle v. Angola Die Casting Co., 783 N.E.2d 316, 320 (Ind. Ct. App. 2003). The interpretation of contract provisions is a question of law. Niccum v. Niccum, 734 N.E.2d 637, 639 (Ind. Ct. App. 2000). Unless contract terms are ambiguous,

5

they are given their plain and ordinary meaning. Id. Controversy between the parties regarding interpretation of contract terms does not necessitate ambiguity in the contract. Id. When provisions of a contract are clear and unambiguous, they are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. Id. However, if the language of a contract is ambiguous, extrinsic evidence may be considered. Bernel v. Bernel, 930 N.E.2d 673, 682 (Ind. Ct. App. 2010), trans. denied. Our paramount goal in interpreting a contract is to ascertain and effectuate the intent of the parties. Id.

## II. Findings of Fact

Neither the single-member Board's order or the Full Board's order contained findings of fact. Wiley requests we remand this case to the Full Board with instructions to provide findings of fact because without them "[t]his Court cannot adequately review the Full Board's decision" and it is "quite difficult for the parties in this matter to formulate intelligent and specific arguments for review." Brief of the Appellant at 11-12. In support of his argument, Wiley cites Indiana Code section 22-3-4-7, which provides that when the Full Board receives an application for review of a Board decision made by less than the Full Board, the Full Board shall conduct a hearing and "shall make an award and file the same with the findings of fact on which it is based."

In Stytle, this court addressed whether the Board is required to issue findings of fact when the facts are undisputed by the parties and only questions of law remain. 783 N.E.2d at 319. We concluded "under certain circumstances, the Board may forego its statutory duty to

6

issue findings of fact when ruling on a motion to dismiss an application. Specifically, when the facts are not disputed and the parties present the Board with a pure question of law, . . . findings are not required." Id. at 320. Like Stytle, this case presents undisputed evidence and pure questions of law – the interpretation of contract provisions. Thus, contrary to Wiley's assertion that this court cannot adequately review the Full Board's decision without findings of fact, we conclude findings of fact are not necessary to decide the legal questions at issue and decline Wiley's request that we remand to the Board to enter findings of fact.

### III. The Worker's Compensation Act

Indiana Code section 22-3-3-4(c) provides the Board may require that "medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment." Wiley argues pursuant to this statute that Midwest is responsible for repairs to his original motorized wheelchair. He cites Talas v. Correct Piping Co., Inc., 435 N.E.2d 22 (Ind. 1982), for support. In Talas, our supreme court reviewed the Full Board's determination that Talas, who became a quadriplegic as a result of a work-related injury, should not receive nursing services under Indiana Code section 22-3-3-4(c) because his quadriplegia would never be reduced. Id. at 25. The court stated the term "impairment" in the statute "connotes the injured employee's loss of physical function(s)." Id. at 26. Further, the court stated:

> It is the longstanding rule of this jurisdiction that terms contained in our Worker's Compensation Act are to be liberally construed so as to effectuate the humane purposes of the Act; doubts in the application of terms are to be resolved in favor of the employee, for the passage of the Act was designed to

shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public.

Id. at 28.

To determine whether the relief Talas sought would reduce his impairment, the court examined the Board's findings of fact and the evidence presented. Id. at 27. The court listed the uncontroverted evidence relevant to the issue: Talas's quadriplegia was permanent, the ramifications of his position rendered him unable to care for himself in any practical way, his inability to provide the most basic needs presented various risks to his future health, and his continued existence was dependent upon full-time assistance from others. Id. at 28-29. In conclusion, the court stated, "[o]ur examination of this evidence, together with the [Board's] findings, leads us to conclude that the Board erred when it found the relief sought by Talas would not serve to 'limit or reduce the amount and extent' of his impairment." Id. at 28.

Here, the Board did not issue findings of fact. Nevertheless, the uncontroverted evidence reveals Wiley is paralyzed from his waist down and has no use of his legs. His impairment is his lack of mobility, and it is also undisputed that the equipment here at issue, his motorized wheelchair, limits or reduces the amount and extent of his impairment. Thus, unless Midwest is correct that Wiley waived his claim for reimbursement of costs for his wheelchair, the Full Board erred in concluding he was not entitled to recover those costs.

IV. The Parties' Agreement

A. Provision 4.C.

Even if Wiley is entitled to reimbursement for repairs to his motorized wheelchair under the Worker's Compensation Act, Midwest argues that in provision 4.C. of the parties'

8

agreement Wiley agreed to waive his claim for repairs in exchange for $3,000 which he could use to buy a replacement. Wiley, on the other hand, argues provision 4.C. of the parties' agreement refers to his claim for a back-up scooter that he would be able to use when his Journeyman scooter is not working properly and/or undergoing repair. Thus, he argues, in 4.C. he agreed to waive his claim that Midwest should buy such a back-up scooter in exchange for the $3,000 he was given by Midwest, but he did not agree to waive claims for repairs to his original Journeyman scooter.

When interpreting a contract, we must read the contract as a whole and should accept an interpretation that harmonizes its provisions. Indiana Gaming Co., L.P. v. Blevins, 724 N.E.2d 274, 278 (Ind. Ct. App. 2000), trans. denied. We should avoid a construction of contractual language that renders any words, phrases, or terms ineffective or meaningless, and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions. Id. The first sentence of 4.C. says that Wiley agrees to waive his claim "for the cost of a replacement scooter." Midwest argues we should interpret this as saying Wiley waived his claim for a scooter that would permanently replace his original Journeyman scooter. If this were an accurate interpretation of Wiley's claim, it would infer that Midwest would no longer be responsible for repairs to Wiley's original scooter because it had been permanently replaced. However, this interpretation would render the second sentence – "[Wiley] may choose to apply such payment to the purchase [of] a more rugged and durable scooter" – ineffective or meaningless. If the agreement was that Midwest would give Wiley $3,000 so that Wiley could purchase a new scooter to permanently replace his original scooter, there

9

would be no need to point out that Wiley could decide to purchase one that is more rugged or durable.

Under Wiley's interpretation of 4.C., he did not waive any claims for repairs to his original scooter. Rather, using Wiley's interpretation, Wiley agreed to waive his claim that Midwest should supply him with a second scooter that would serve as a back-up or temporary replacement when his original scooter required repairs. This interpretation gives the second sentence of 4.C. logical meaning. In this interpretation, the second sentence gives Wiley a second option: rather than buying a temporary replacement to have when his original scooter required repairs, he could buy a more durable primary scooter that would be less likely to break down and require repairs.

Read as a whole, we conclude 4.C. unambiguously provides that Wiley agreed to waive his claim for a temporary replacement scooter to use whenever his original scooter requires repairs in exchange for $3,000 paid by Midwest, and that, if Wiley preferred, he could use the money to purchase a more dependable primary scooter rather than a back-up scooter that is of the same quality as his original scooter. We therefore reverse the Full Board's denial of Wiley's claim for reimbursement for repairs to his Journeyman scooter and remand to the Full Board to enter a judgment reimbursing Wiley for such costs.

B. Provision 4.D.

Midwest contends the Board incorrectly interpreted provision 4.D. of the parties' agreement and that Wiley agreed to waive any claims for payment or reimbursement for his pick-up truck, including for the chair lift that enables him to enter and exit the vehicle. Wiley

10

argues provision 4.D. makes no reference to reimbursement for repairs to the chair lift, but only the pick-up and topper. Based on a plain reading of the contract provision, we agree with Wiley. Provision 4.D. states that Wiley waives any and all claims for repairs to his pick-up truck and topper. The repairs at issue, however, were to the chair lift that was added to the truck. Provision 4.D. does not say anything about Wiley waiving claims for reimbursement for repairs to the chair lift. We therefore affirm the Full Board's reversal of the single-officer Board's decision regarding Wiley's claim for reimbursement based on repairs to his chair lift.

## Conclusion

The Board erred in denying Wiley's claim for the reimbursement of costs associated with his wheelchair because the undisputed evidence reveals his impairment is reduced by having a working motorized wheelchair and the parties' agreement did not waive this claim. Further, based on a plain reading of the agreement, the Board did not err in awarding Wiley reimbursement for the cost of repairing the chair lift added to his pick-up truck. We therefore reverse in part, affirm in part, and remand to the Full Board to enter an amended order consistent with this opinion.

Reversed in part, affirmed in part, and remanded.

NAJAM, J., and VAIDIK, J., concur.

11