# FOR PUBLICATION



FILED
Jun 13 2012, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEY FOR APPELLEE:

**BRENT R. DECHERT**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DENNIS JACK HORNER )
)
    Appellant-Petitioner, )
)
        vs. ) No. 34A02-1111-DR-1029
)
MARCIA (HORNER) CARTER, )
)
    Appellee-Respondent. )
)

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Lynn Murray, Judge
Cause No. 34C01-9803-DR-168

**June 13, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Seven years after Dennis Jack Horner ("Husband") and Marcia (Horner) Carter ("Wife") reached a mediated settlement agreement during dissolution proceedings, Husband sought to modify the terms of that agreement on the basis of mistake. The trial court denied his request. Husband now appeals, contending that the trial court should have allowed him to offer extrinsic evidence—specifically, communications that occurred during mediation—to show that there was a mistake in the drafting of the agreement. We conclude that Alternative Dispute Resolution Rule 2.11 and Indiana Evidence Rule 408 allow the introduction of mediation communications to establish traditional contract defenses. We also find that the trial court correctly determined that the agreement in this case provided for a property settlement that survived Wife's remarriage. We affirm.

**Facts and Procedural History**

Husband and Wife were divorced in 2005 after thirty-eight years of marriage. During dissolution proceedings, the parties reached a mediated settlement agreement, which the trial court incorporated into the decree of dissolution. The five-page settlement agreement contains four sections, entitled "Real Estate," "Other Property Distribution," "Maintenance/Support," and "Further Agreements."

In the section entitled "Real Estate," the parties agreed that they would sell the marital residence, and Husband would use the proceeds to purchase a new residence for Wife. Specifically, the section provided that Husband

> will purchase, lease, purchase with lease option or in some other form acquire new residence upon the sale of the marital residence of the parties.

2

[Husband] agrees to pay the sum of $550.00 per month (taxes and insurance included) towards the purchase of new residence. New residence shall be titled in [Husband's] name alone but [Wife] shall have exclusive possession of the new residence. [Husband] agrees to grant to [Wife] a life estate in the new residence . . . .

Until such time as the marital residence is sold, [Husband] shall be responsible for the mortgage/utility payments . . . .

Appellant's App. p. 20-21. The "Maintenance/Support" section of the agreement provided, in relevant part:

Upon the entry of the Decree of Dissolution, [Husband] agrees to pay to [Wife] as permanent maintenance:
(a) The sum of $500.00 per pay period for twelve (12) consecutive months[.]
(b) The sum of $600.00 per pay period for the thirteenth (13th) month forward until and unless otherwise modified by the Court or the death of the [Wife].

*Id.* at 22. The parties also agreed that the permanent maintenance order was subject to modification and listed circumstances where modification might be necessary, such as job loss, retirement, "or the re-marriage of [Wife]." *Id.* The agreement also disposed of other marital property, including Husband's employee savings account and pension through Chrysler, where he had been employed for nearly forty years. The parties agreed to divide the employee savings account equally between them, but Wife disclaimed her interest in Husband's pension.

The parties were unable to sell the former marital residence, and Husband entered into a contract with Wife's boyfriend, Billy Carter, to sell the residence to Carter. The contract required Carter to pay Husband $660 per month. When Wife married Carter in 2007, the parties filed an agreed-upon entry that terminated Husband's monthly

3

maintenance obligation to Wife. Husband did not seek modification of his obligation to make monthly housing payments to Wife at that time.

Carter and Wife lived in the former marital residence and Carter continued to pay Husband $660 each month until sometime in 2010. Meanwhile, Husband paid the mortgages, taxes, and other financial obligations on the property in excess of $800 each month.[1] By early 2011, Carter had fallen many months behind in his monthly payment, and Husband evicted Carter and Wife. In April 2011, Wife filed a motion for rule to show cause alleging that Husband had failed to make the $550 monthly housing payments to Wife. In his answer, Husband claimed he had fulfilled his obligation to Wife by selling the former marital residence to Carter and by paying the mortgage, taxes, and other bills associated with the property. Husband also filed a motion to modify the settlement agreement and terminate his monthly housing payments to Wife. The trial court held a hearing on the parties' motions in August 2011.

At the hearing, Husband argued that there was a mistake in the settlement agreement because his obligation to make housing payments to Wife was actually maintenance, which terminated upon Wife's remarriage. Husband stated, "[I]t says in the divorce decree once she's married everything stops; everything, and that's the way I put it to the mediator." Tr. p. 12. Twice more he stated that there was a mistake in the agreement: "My understanding was that it was all maintenance," and "Actually I thought everything was supposed to stop when she got married." *Id.* at 19, 23. When Husband again attempted to testify as to what he told the mediator, Wife's counsel objected. The

---

[1] At one point, Husband was paying two mortgages on the former marital residence in the amount of $1280 per month. After refinancing, the mortgage payment was $825 per month.

trial court sustained the objection, "[c]learly anything that was said in mediation is clearly inadmissible." *Id.* at 23. Nonetheless, Husband later elaborated:

> Well, my understanding was that when [Wife] got married everything stopped. I mean why wouldn't it. That's common sense. I don't know. That was my understanding. That's the way I made it clear to the mediator. If it didn't get in the agreement properly then we need to talk to my two attorneys at the time, or the three attorneys at the time. I had an attorney, she had an attorney . . . .

*Id.* at 29. Wife, however, explained that she had agreed to relinquish her interest in Husband's pension because Husband had agreed to pay her housing expenses, and for this reason, she believed the monthly housing payments were not affected by her remarriage. *Id.* at 34, 39.

In October 2011, the trial court entered an order, in which it framed the issue as "whether the Settlement Agreement terms that required [Husband] to purchase and maintain a life-estate residence for [Wife] was a division of property or an award of maintenance[.]" Appellant's App. p. 14. The court then described the provisions in dispute:

> 14. Here, the property settlement agreement clearly provided for two distinct sections that obligated [Husband] to provide funds to [Wife] after the dissolution. . . .
> 15. The agreement's provision for [Husband] to make periodic payments of $500 then $600 "per pay period" was clearly denominated as permanent maintenance in which the parties specifically agreed was subject to modification. By agreement in July 2007, due to [Wife's] remarriage and [Husband's] plan to retire, [Husband's] obligation to pay monthly maintenance terminated in August 2007.
> 17. *In the court's judgment, the provisions requiring [Husband] to provide funds for [Wife's] housing during her lifetime were in the nature of a property settlement, specifically to offset [Wife's] release of her right to a portion of [Husband's] pension.*
> 18. At the time of the dissolution, the parties owned three significant marital assets: the marital residence, [Husband's] Chrysler pension, and

5

[Husband's] Chrysler savings plan account. The property settlement agreement divided the savings plan account equally, and [Husband] retained all interest in his Chrysler pension. In return for releasing all interest in [Husband's] pension, the equity from the sale of the marital residence was to apply to purchase of a new residence for [Wife], and [Husband] would pay $550.00 per month to maintain the home during her lifetime.

*Id.* at 14-15 (emphasis added). Having concluded that the housing payments were for a property settlement, rather than maintenance, the court determined that Husband had a continuing obligation to provide the $550 monthly housing payment to Wife. *Id.* at 16.

Husband now appeals.

**Discussion and Decision**

On appeal, Husband contends that there was a mistake in the drafting of the mediated settlement agreement because the monthly housing payments to Wife were intended to be maintenance, which terminated upon Wife's remarriage. Husband argues that the trial court should have allowed him to introduce extrinsic evidence—specifically, communications that occurred during mediation—to show that there was a mistake in the drafting of the agreement. Husband also argues that the trial court erred in determining that the housing payments were for a property settlement, rather than maintenance.

It is well settled that we apply the general rules of contract construction when interpreting settlement agreements. *Bernel v. Bernel*, 930 N.E.2d 673, 681 (Ind. 2010), *trans. denied*. Where contract language is unambiguous and the intent of the parties is discernible from the written contract, the court is to give effect to the contract's terms. *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind. Ct. App. 2008), *trans. denied*. A contract is ambiguous if a reasonable person would find the contract subject to more than one

6

interpretation. By contrast, the terms of a contract are not ambiguous simply because the parties disagree as to their interpretation. *Id.* If contract language is ambiguous, extrinsic evidence may be considered. *Bernel*, 930 N.E.2d at 682.

Interpretation of a settlement agreement, as with any contract, presents a question of law, which we review de novo. *Deel v. Deel*, 909 N.E.2d 1028, 1033 (Ind. Ct. App. 2009). When asked to determine whether payments are for maintenance or property settlement, we consider various factors. The factors indicating that a payment is for maintenance are: (1) the designation as maintenance; (2) provision terminating the payments upon death of either party; (3) payments made from future income; (4) provisions for termination upon remarriage; (5) provisions calling for the modification based upon future events; and (6) payments for an indefinite period of time. *Id.* at 1034. Property settlements are indicated when: (1) the payments are for a sum certain payable over a definite period of time; (2) there are no provisions for modification based on future events; (3) the obligation to make payments survives the death of the parties; (4) the provisions call for interest; and (5) the award does not exceed the value of the marital assets at the time of dissolution. *Id.*

## I. Extrinsic Evidence

Husband first contends that there was a mistake in the drafting of the agreement and that the trial court erred when it excluded extrinsic evidence of this mistake. Wife contends that Husband has waived this argument by failing to raise it when the parties terminated Wife's maintenance in 2007 and by now failing to present a cogent argument

7

on the issue. However, given our preference for resolving issues on their merits, we address Husband's claims as raised on appeal.

According to the agreement, Husband must make monthly housing payments to Wife according to the terms of the section entitled "Real Estate." Wife contends, and the trial court agreed, that this was a property settlement. However, the agreement provides that this obligation terminates upon the death of either party, which is a characteristic typical of maintenance. *Deel*, 909 N.E.2d at 1034. Further, although the trial court did not expressly state whether it believed the agreement to be ambiguous, it relied on testimony from the parties to interpret its terms, particularly, Wife's testimony about why she disclaimed Husband's pension. We conclude that the agreement here was ambiguous. We may therefore consider extrinsic evidence, and our standard of review is de novo. *Bernel*, 930 N.E.2d at 682. The precise issue before us, however, is not whether Husband may offer extrinsic evidence, but rather, whether that evidence may be communications that occurred in mediation. This Court has yet to answer this particular question.

Alternative Dispute Resolution Rule 2.11 ("Rule 2.11"), which concerns the confidentiality of mediation, states that "mediation shall be regarded as settlement negotiations as governed by Indiana Evidence Rule 408." Indiana Evidence Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule

8

does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass alternative dispute resolution.

The rule does not require exclusion when the evidence is offered for a purpose other than "to prove liability for or invalidity of the claim or its amount." Ind. Alternative Dispute Resolution Rule 2.11; *see also Gast v. Hall*, 858 N.E.2d 154, 161 (Ind. Ct. App. 2006) (mediation communications offered to show lack of testamentary capacity were admissible under Rule 2.11 as evidence offered for another purpose), *trans. denied*. Here, Husband sought to offer evidence of mediation communications to establish that a mistake occurred in the drafting of the agreement and to modify the agreement based upon that mistake. Thus, this evidence was not offered "to prove liability for or invalidity of the claim or its amount" regarding the housing payments to Wife. Because Husband sought to offer this evidence for a purpose other than those prohibited by Rule 2.11, the trial court erred in excluding it.

In reaching this decision, we note that public policy favors the use of mediation and other amicable settlement techniques that allow parties to resolve their disputes without resorting to litigation, and promote party autonomy and decrease the strain on our courts. Although confidentiality is an important part of mediation, strict adherence to confidentiality would produce an undesirable result in this context—parties would be denied the opportunity to challenge issues relating to the integrity of the mediation

9

process, such as mistake, fraud, and duress.[2]  Allowing the use of mediation communications to establish these traditional contract defenses provides parties their day in court and encourages, rather than deters, participation in mediation.

Our holding is consistent with Section 6(b)(2) of the Uniform Mediation Act ("the UMA"),[3] which provides an exception for testimony of parties to mediation that is similar to Rule 2.11, although more expansive:

> (b) There is no privilege . . . if a court, administrative agency, or arbitrator finds, after a hearing in camera, that the party seeking discovery or the proponent of the evidence has shown that the evidence is not otherwise available, that there is a need for the evidence that substantially outweighs the interest in protecting confidentiality, and that the mediation communication is sought or offered in:
>> (2) [A] proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of mediation.

The comment to Section 6(b)(2) explains that the exception "is designed to preserve traditional contract defenses to the enforcement of the mediated settlement agreement that relate to the integrity of the mediation process, which otherwise would be unavailable if based on mediation communications."  Unif. Mediation Act §6, cmt. 11.

Our holding does not change the outcome in this case, however.  Husband did testify to communications that occurred during mediation; his statements about his understanding of the settlement agreement and communications to the mediator fall far

---

[2] *See* Peter Robinson, *Centuries of Contract Common Law Can't Be All Wrong: Why the UMA's Exception to Mediation Confidentiality in Enforcement Proceedings Should be Embraced and Broadened,* 2003 J. Disp. Resol. 135, 143-48 (2003).

[3] Eleven jurisdictions have adopted the UMA, including the District of Columbia, Idaho, Illinois, Iowa, Nebraska, New Jersey, Ohio, South Dakota, Utah, Vermont, and Washington.  *See* Sarah R. Cole et al., Mediation: Law, Policy & Practice § 8:14 (2d ed.).

short of establishing any mistake that might entitle him to relief.[4] He offered no evidence of a scrivener's error.[5] He offered no evidence of mutual or unilateral mistake—that is, no evidence that both he and Wife were mistaken about an essential fact or that Wife induced any mistake. We therefore conclude that although the trial court erred in excluding this extrinsic evidence, this error was harmless.[6]

## II. Property Settlement

Husband also argues that the trial court erred in concluding that the housing payment provision is for a property settlement. He argues that certain facts, particularly that the payments terminate upon death of either party and that the payments come from his future income, indicate that the payments are maintenance. We disagree.

The provision at issue indeed has characteristics that resemble maintenance: Husband's obligation to make housing payments to Wife terminates upon the death of either party and the monthly payments appear to come from Husband's future earnings. There is also no provision for interest. Further, the amount was not for a sum certain payable over a definite period of time, and it is not clear whether the payments will eventually exceed the value of the marital assets at the time of dissolution. However, the remaining factors favor a conclusion that the payments are for a property settlement. The parties placed this provision under the "Real Estate" portion of the settlement agreement,

---

[4] To the extent Husband argues that he offered no additional evidence of mistake because of the court's ruling excluding this evidence, Husband made no offer of proof to create an appellate record as to what additional evidence he wished to present.

[5] This fact distinguishes the Florida case on which Husband relies. *See* Appellant's Br. p. 6.

[6] The parties dispute whether the trial court considered Husband's testimony. We need not resolve this issue because even assuming it did not, this error would be harmless. Husband's testimony did not establish that any mistake occurred.

11

not under the section clearly entitled "Maintenance/Support." The parties also expressly provided that other provisions in the agreement were subject to modification, but did not do so for the housing-payment provision. These facts strongly suggest that the parties intended that the payments be for a property settlement, not maintenance. This conclusion is bolstered by Husband's actions. When Wife remarried in 2007, she and Husband filed an agreed-upon entry that terminated Husband's monthly maintenance obligation to Wife. Tellingly, Husband did not also seek to modify what he claims he always believed to be maintenance, the monthly housing payment. In fact, he did not do so until five years later, in 2011. Finally, Husband received the full value of his Chrysler pension in exchange for making a monthly housing payment to Wife. *See* Appellant's App. p. 15. This, too, strongly indicates that the housing payments are for a property settlement.

A dissolution court is in the best position to resolve questions of contract interpretation and enforcement. *Bernel*, 930 N.E.2d at 682. Based on the forgoing, we cannot say that the trial court erred in determining that the monthly housing payments are for a property settlement, rather than maintenance.[7]

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.

---

[7] Because we resolve this issue as we do, we need not address the parties' arguments regarding the dissolution court's authority to modify the agreement.