**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK R. REGNIER**
Bingham Farrer & Wilson
Elwood, Indiana

ATTORNEYS FOR APPELLEE:

**THOMAS M. BEEMAN**
**KYLE B. DEHAVEN**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ESTATE OF RUBY L. ROWLAND,

JAMES A. ROWLAND, JR.,

Appellant-Petitioner,

vs.

MICHAEL B. ROWLAND,

Appellee-Respondent.

No. 48A02-1203-ES-223

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph Pyle, III, Judge
The Honorable Joseph R. Kilmer, Master Commissioner
Cause No. 48C01-0807-ES-117

**February 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

James A. Rowland, Jr. ("James"), personal representative of the Estate of Ruby Rowland (the "Estate"), appeals the trial court's denial of its petition to recover alleged assets from Michael Rowland. We affirm.

## Issues

The Estate raises several issues, which we consolidate and restate as whether the trial court properly denied its petition to recover assets.[1]

## Facts

Ruby was married to James Rowland, Sr. ("James, Sr.,"), and they had two sons, James and Michael. After James, Sr., died in 2004, Ruby added Michael as a joint owner of her checking and savings accounts. Ruby also had a certificate of deposit ("CD") at Main Source Bank that she opened in 2000 and renewed for the last time in March 2008. The CD at all times listed Michael as the payable on death beneficiary.

In May 2005, Ruby signed a power of attorney appointing Michael as her attorney in fact in the event of her disability or incapacity. Her attorney, Richard Benton, was appointed the successor attorney in fact. Also in May 2005, Ruby signed a Last Will and Testament. She made specific bequests, directed that cash, stocks, bonds, and CD be equally divided between Michael and James, and directed that five acres of her real

[1] The Estate also argues that the assets should be placed in constructive trust for James's benefit. However, the Estate did not make this argument to the trial court and cannot raise the issue for the first time on appeal. See Babinchak v. Town of Chesterton, 598 N.E.2d 1099, 1103 (Ind. Ct. App. 1992) (holding that an argument raised for the first time on appeal was waived).

property be given to her grandson and that the remaining real property be shared equally by Michael and James.

Although James farmed the property, in February 2008, Ruby deeded her farm and house to Michael. On April 15, 2008, Ruby executed a second Last Will and Testament. Ruby again made specific bequests and directed that cash, stocks, bonds, and CD be equally divided between Michael and James. If, however, Michael cared for her in his home for at least thirty days prior to her death, Ruby directed that Michael receive all of the cash, stocks, bonds, and CD. Ruby also directed that her residuary estate be divided evenly between Michael and James. Shortly after signing the second will, Ruby became ill and was hospitalized. She died on May 15, 2008. On the day of her death, Michael wrote two checks from the joint account—one check for $9,999.99 to his business and one check for $10,000.00 to purchase an annuity.

After Ruby's death, James realized that she had previously transferred her real property to Michael and that the CD and bank accounts had passed directly to Michael. James filed a petition to be appointed personal representative of the Estate, which the trial court ultimately granted. The Estate then filed a petition to recover assets. The Estate alleged that Ruby was "in a subordinate position, was in bad health, and was susceptible to undue influence" and that Michael had violated his position of trust and confidence by becoming a joint owner of Ruby's accounts, writing checks to himself, and withdrawing funds. App. p. 22. The Estate also alleged that the transfer of property to Michael was "inappropriate." Id. at 23. The Estate claimed that the transactions were "presumptively fraudulent" and asked that the assets be returned to the Estate. Id.

After a hearing, the trial court entered findings of fact and conclusions thereon. The trial court found there was no indication Ruby was of unsound mind or subject to undue influence when she signed the second will, Michael never used the power of attorney to transfer Ruby's assets, there was no evidence that Ruby had any mental impairments, there was no evidence that Ruby did not intend Michael to receive the proceeds of the bank accounts or CD, and there was no evidence that Ruby's transfer of the property to Michael was a result of undue influence. The trial court denied the Estate's petition to recover alleged assets. The Estate filed a motion to correct error, which the trial court denied. The Estate now appeals.

## Analysis

The issue is whether the trial court properly denied the Estate's petition to recover alleged assets of the Estate. The trial court here issued sua sponte findings of fact and conclusions thereon.[2] Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. Id. When a trial court has made special findings of fact, we review sufficiency of the evidence using a two-step process. Id. First, we must determine whether the evidence

[2] At the conclusion of the hearing on this matter, the trial court asked if the parties wanted to provide proposed findings, and the parties agreed to do so. The Estate argues that the trial court adopted Michael's findings verbatim. "While a trial court is discouraged from adopting a party's proposed findings verbatim, this practice is not prohibited." In re Adoption of A.S., 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), trans. denied. Moreover, the Estate has not included the parties' proposed findings in its appendix and has failed to demonstrate that the findings were verbatim.

supports the trial court's findings of fact. Id. Second, we must determine whether those findings of fact support the trial court's conclusions of law. Id.

Findings will only be set aside if they are clearly erroneous. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Id. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Id. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. Id.

The Estate argues that several of the trial court's findings of fact and conclusions thereon are clearly erroneous. We begin by addressing the Estate's main argument—that a presumption of undue influence applies here due to Michael's status as Ruby's power of attorney. We first look to the statutes governing the liabilities of an attorney in fact. Indiana Code Section 30-5-9-2 provides:

> (a) An attorney in fact who acts with due care for the benefit of the principal is not liable or limited only because the attorney in fact:
>
> (1) also benefits from the act;
>
> (2) has individual or conflicting interests in relation to the property, care, or affairs of the principal; or
>
> (3) acts in a different manner with respect to the principal's and the attorney in fact's individual interests.
>
> (b) A gift, bequest, transfer, or transaction is not presumed to be valid or invalid if the gift, bequest, transfer, or transaction:

(1) is:

(A) made by the principal taking action; and

(B) not made by an attorney in fact acting for the principal under a power of attorney; and

(2) benefits the principal's attorney in fact.

Ind. Code § 30-5-9-2.

Although the Estate argues that a presumption of undue influence applies here, we held in In re Estate of Compton, 919 N.E.2d 1181, 1187 (Ind. Ct. App. 2010), trans. denied, that "[a] presumption of undue influence is now conditioned upon the attorney in fact's actual use of the power of attorney to effect the questioned transaction for his or her benefit." "The benefiting attorney in fact is freed from the presumption of undue influence so long as the power of attorney is unused in the questioned transaction." Compton, 919 N.E.2d at 1187.

The power of attorney at issue here was signed by Ruby in May 2005 and appointed Michael as her attorney in fact in the event of her disability or incapacity. However, many of the transactions at issue occurred prior to Ruby's signing of the power of attorney in May 2005. Ruby's CD was established 2000 with Michael listed as the payable on death beneficiary, and Ruby renewed the CD through March 2008. Ruby added Michael to her accounts as a joint owner in July 2004.

As for the transactions after May 2005, it is clear from the record that Ruby was never declared disabled or incapacitated, and Michael never acted as Ruby's attorney in

fact. Ruby lived alone and continued conducting her own business until her death, although the testimony at the hearing established that she required some assistance. Despite the fact that Ruby herself signed the checks, signed the wills, and transferred the property, the Estate argues Indiana Code Section 30-5-9-2(b) is inapplicable because the transactions were not "made by the principal taking action." The Estate seems to argue that Ruby was unaware of the consequences of her actions and was influenced by Michael. See Compton, 919 N.E.2d at 1188 (noting "this is not a case where Stephen merely signed off on the contracts and did not know the consequences of his actions because Scott was the orchestrator of the deal").

The trial court found no evidence that anyone had "dominant control" over Ruby and no evidence that she was "mentally incompetent." App. p. 13. As a result, the trial court found no presumption of undue influence under Indiana Code Section 30-5-9-2. Although there may have been conflicting evidence regarding whether Ruby was fully aware of the consequences of her actions and was influenced by Michael, our standard of review does not allow us to reweigh the evidence or judge the credibility of witnesses. Consequently, we conclude that the trial court properly found that the presumption of undue influence as a result of Michael's status as Ruby's attorney in fact does not apply here.

The Estate also challenges the trial court's findings that Michael was entitled to the funds in Ruby's bank accounts. "Since Indiana's adoption of the Non-Probate Transfer Act, Indiana has operated under a statutory presumption that a survivor to a joint account is the intended receiver of the proceeds in that account." Dean v. Pelham, 899

N.E.2d 662, 666 (Ind. Ct. App. 2008), clarified on reh'g, 901 N.E.2d 648 (Ind. Ct. App. 2009), trans. denied. That statutory presumption is based on Indiana Code Section 32-17-11-18(a), which provides: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." A "party" to an account is defined as "a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple party account." I.C. § 32-17-11-7(a). "To overcome the statutory presumption for survivorship rights, the burden falls upon the Estate to prove by clear and convincing evidence that survivorship was not intended." Dean, 899 N.E.2d at 669.

The only evidence presented here is that, after her husband's death, Ruby added Michael as a joint owner of the accounts. The trial court concluded there was no evidence that Ruby "intended for anyone other than Michael, the joint owner, to have the proceeds." App. p. 12. The Estate argues that Michael became the owner of the accounts through undue influence, but our review of the record reveals no support for this assertion. There is no evidence of any undue influence by Michael at the time Ruby created the accounts, which is the relevant time period. The trial court properly found that the Estate failed to prove by clear and convincing evidence that the statutory presumption was overcome.

The trial court made similar findings of fact and conclusions thereon concerning the CD that listed Michael as the payable upon death beneficiary. The trial court found that Indiana Code Section 32-17-11-18(b) applied, and the Estate does not challenge that

finding. That statute provides: "If the account is a trust account, on death of the trustee . . . , any sums remaining on deposit belong to the person or persons named as beneficiaries who survive the trustee, unless there is clear and convincing evidence of a contrary intent." I.C. § 32-17-11-18(b).[3] Ruby opened the CD in 2000 and renewed it for the last time in March 2008. There was no evidence presented regarding Ruby's intent when she created the CD. The trial court properly found that the Estate failed to prove by clear and convincing evidence that the statutory presumption was overcome.

Next, the Estate argues that the trial court's findings regarding the transfer of Ruby's real property were clearly erroneous. "Certain legal and domestic relationships raise a presumption of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other." Supervised Estate of Allender v. Allender, 833 N.E.2d 529, 533 (Ind. Ct. App. 2005), trans. denied. "'These relationships include that of attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, parent and child, and there may be others.'" Id. (quoting Lucas v. Frazee, 471 N.E.2d 1163, 1166-67 (Ind. Ct. App. 1984)).

> In such cases, if the plaintiff's evidence establishes (a) the existence of such a relationship, and (b) that the questioned transaction between those parties resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate, the law imposes a presumption that the transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and thus void.

[3] Indiana Code Section 32-17-11-18(b) originally referred directly to payable on death accounts, but it was amended by Pub. L. No. 143-2009, § 37, which was effective July 1, 2009.

Id. At that point, the burden of proof shifts to the dominant party who must demonstrate by clear and unequivocal proof that the questioned transaction was made at arm's length and thus valid. Id. When a judgment is entered in favor of the dominant party, we review not only the question of whether the judgment is contrary to law, but also whether the dominant party's evidence is sufficient to sustain the judgment that the presumption has been rebutted under the clear and unequivocal proof standard. Id.

The trial court found that "no one person had any dominant position over [Ruby] in the last years of her life" and that multiple people assisted her. App. p. 11. The Estate argues that this finding is erroneous because Michael and/or his wife "orchestrated" the preparation and signing of two wills, two power of attorney forms, the deed, and the addition of Michael as joint or payable on death beneficiary on her accounts. Appellant's Br. p. 19. This argument is merely a request that we reweigh the evidence, which we cannot do. Evidence was presented to the trial court that several people assisted Ruby, that Ruby lived alone until her final hospitalization, that she conducted her own business affairs with some assistance, that she was never diagnosed with a mental impairment, and that she often visited casinos with her friends. This evidence supported the trial court's finding, and thus, the presumption of undue influence is inapplicable. See, e.g., Barkwill v. Cornelia H. Barkwill Revocable Trust, 902 N.E.2d 836, 841 (Ind. Ct. App. 2009) (holding that the son "was not in a dominant role in the relationship with his mother at the time she changed the trust, and therefore, no presumption of undue influence attaches"), trans. denied. The trial court also concluded that the real estate was a gift from Ruby to Michael and that "[t]here is absolutely no evidence that the gift was in any

way the product of undue influence or fraud." App. p. 13. The trial court's conclusion is not clearly erroneous.

Finally, the Estate challenges some of the trial court's findings related to cash given to Michael. The trial court found that, during her lifetime, Ruby gave gifts to both James and Michael and that there was no evidence the gifts were procured by undue influence. The Estate contends that the gift to James was small and that the gifts to Michael were a result of undue influence. We have already found that the trial court's finding of no undue influence is not clearly erroneous. The Estate's argument to the contrary is merely a request that we reweigh the evidence, which we cannot do.[4]

## Conclusion

The trial court properly denied the Estate's petition to recover assets. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.

---

[4] The Estate also challenges several findings related to Ruby's 2005 and 2008 wills. However, neither will has been admitted to probate, and the wills are irrelevant to the petition to recover assets, except possibly to the extent they show undue influence or dominance over Ruby. Both Attorney Benton and Ruby's friend, Betty Miller, testified that Ruby was competent at the time she signed the wills. Further, the trial court found no dominance or undue influence, and the trial court's findings are supported by the evidence.