## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2017, 8:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Shawn P. Ryan
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Robert Wyatt Mick, Jr.
Michael A. Derucki
Bingham & Loughlin, P.C.
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Reodine S. Harding Revocable Trust, by Ryan Harding, Trustee, et al.,

*Appellant-Defendant,*

v.

Mary Lou Wolfe, as Personal Representative of the Estate of Reodine S. Harding, Deceased,

*Appellee-Plaintiff.*

October 4, 2017

Court of Appeals Case No.
71A03-1702-PL-281

Appeal from the
St. Joseph Superior Court

The Honorable
Jenny Pitts Manier, Judge

Trial Court Cause No.
71D05-1303-PL-51

**Kirsch, Judge.**

Reodine S. Harding Revocable Trust, by Ryan Harding, Trustee, et al. ("the Trust") appeals the trial court's order in favor of Mary Lou Wolfe, as Personal Representative of the Estate of Reodine S. Harding ("the Estate"), declaring the Trust invalid because of undue influence and requiring the assets held in the Trust to be treated as probate assets. The Trust raises several issues for our review, of which we find the following to be dispositive:

> I. Whether the trial court erred in finding that the Trust was invalid as a product of undue influence and that the assets held in the Trust should be treated as probate assets.

The Estate also raises several issues on cross-appeal, which we restate as:

> II. Whether the trial court erred in not concluding that the Trust was invalid as a product of constructive fraud;

> III. Whether the trial court abused its discretion when it did not award attorney's fees to the Estate against Ryan Harding directly as a litigant pursuant to Indiana Code section 34-52-1-1(b); and

> IV. Whether the Estate is entitled to recover appellate attorney's fees.

We affirm.

## Facts and Procedural History

[3]    Reodine S. Harding ("Reodine") died March 29, 2011. Her sister-in-law, Mary Lou Wolfe ("Mary Lou"), was appointed as personal representative of the Estate of Reodine S. Harding. Prior to her death, Reodine was married to Mary Lou's brother, William Orville Harding ("William"). Reodine graduated from high school, and she and William married in 1957. Mary Lou knew Reodine even prior to Reodine's marriage to William. Mary Lou and her husband and Reodine and William socialized as married couples with one another often.

[4]    William owned a business, Michiana Auto Painting. Reodine worked in the shop when the business first started, getting cars ready to be painted. She later left the shop and performed tasks in the office of the business. William died November 4, 1995. Prior to his death, also in 1995, Reodine executed a power of attorney appointing Mary Lou as her attorney in fact. This power of attorney was drawn up at William's direction because he was concerned that Reodine would not be able to sufficiently attend to her financial affairs and the financial affairs of the business if he were to die.

[5]    As Reodine's attorney in fact, Mary Lou received requests for assistance from Reodine a couple of times a week. Some of these tasks included helping Reodine to decide what to do with her certificates of deposit, arranging for sales of stock, assisting in making a claim to recover unclaimed property from the State, and managing William's business until it was sold about a year after his death. When they would dine out at a restaurant, Reodine would always have

Mary Lou pay Reodine's bill with Reodine's credit card because Reodine found the process confusing. Prior to 2006, Mary Lou would go to Reodine's home to write checks to cover Reodine's expenses with Reodine sometimes signing the checks and Mary Lou doing so at other times. Sometime in 2006, Reodine suffered a fall and required surgery and rehabilitation therapy. After this accident, Mary Lou decided to keep Reodine's checkbook with her to handle Reodine's cash assets.

[6] Reodine had a second surgery in 2008, and when she was released from the hospital, she moved into the Sterling House assisted living facility to undergo rehabilitation therapy. Reodine never returned to her home and remained a resident at Sterling House, moving in because she was not able to live alone and needed assistance with the activities of daily living. Mary Lou and her husband met with the staff at Sterling House to finalize the arrangements for Reodine's admission to the facility for residency. Mary Lou and her husband would visit Reodine at Sterling House, especially early in her residency there. However, walking began to become difficult for Mary Lou, and she was unable to go to visit Reodine as often. During the time that Mary Lou's visits became less frequent, Rhonda Williams ("Rhonda"), Reodine's step-granddaughter, was visiting Reodine.

[7] While Mary Lou was Reodine's attorney in fact, Reodine gave Rhonda $1,000.00 on two separate occasions to finance vacations. In 1996, Reodine also made gifts to her stepsons, Barry and Michael Harding, $10,000.00 per recipient. Other than these gifts, however, the only gifts Reodine discussed

with Mary Lou were Christmas gifts, totaling less than $1,000.00 annually, for nieces and nephews. There is no evidence that, during the time Mary Lou served as Reodine's attorney in fact, Reodine was in the habit of making large gifts to family or anyone else.

[8] Mary Lou last visited Reodine on March 17, 2010. Mary Lou had not seen Reodine in a month due to Mary Lou being ill. The March 17 visit was not out of the ordinary, and the two parted amicably. Within a few days, Mary Lou received a message on her answering machine from Mary Ann Boulac ("Boulac"), who stated she was Reodine's attorney. A few days after she left the telephone message, Boulac wrote a letter to Mary Lou and advised her that Mary Lou's status as attorney in fact had been terminated and that Rhonda had been appointed as Reodine's attorney in fact. Mary Lou had had no prior discussions with either Reodine or Rhonda about terminating the power of attorney. The power of attorney pursuant to which Mary Lou was appointed Reodine's attorney in fact was terminated on March 19, 2010. Mary Lou never again had any contact with Reodine.

[9] On June 25, 2010, Reodine executed the Trust, which was prepared by attorney Boulac. Polly Anna Pearson ("Pearson"), who was a Sterling House administrator, witnessed the execution of the Trust. Pearson did not read the Trust. The Trust was executed in the sunroom at Sterling House with Boulac and Reodine present and Pearson walking in and out of the room while Boulac spoke to Reodine. Pearson testified that she believed that Reodine understood what she was doing in executing the Trust. *Tr. Vol. II* at 104. Rhonda signed

the Trust as a trustee, with both Pearson and Boulac signing as witnesses. *Appellant's App. Vol. II* at 42. The Trust named Rhonda and Reodine as co-trustees during the life of Reodine and both Rhonda and Ryan Harding ("Ryan") as co-trustees upon the death of Reodine. *Id*. at 35. The Trust made a testamentary distribution that differed from that of the previously-executed will, including a testamentary distribution to Rhonda among other persons. *Id*. at 36. Rhonda terminated the services of an accountant that Reodine and William had used for over thirty years after the preparation of Reodine's 2009 tax return.

[10] Evidence before the trial court showed that Reodine had at least $415,262.86 in cash assets and at least $81,000.00 in real estate assets on March 19, 2010, the day that Rhonda assumed the role of attorney in fact for Reodine. *Appellee's App. Vol. VI* at 38. Reodine had a limited number of creditors that, during the relevant time-period, amounted to permissible payouts of only $73,583.75. *Appellee's App. Vol. VII* at 12-13. After becoming Reodine's attorney in fact on March 19, 2010, Rhonda transferred to herself and other who were not creditors of Reodine $356,231.78 in assets that had belonged to Reodine and had been previously titled in Reodine's name alone. Rhonda made the transfers as cash payouts in over 300 separate transactions, which she labeled as "gifts" to herself. *Appellee's App. Vol. IV* at 2-20; *Appellee's App. Vol. V* at 28-29.

[11] Reodine died on March 29, 2011 at the age of 84. On April 5, 2011, Mary Lou as personal representative of Reodine's estate filed the Last Will and Testament of Reodine S. Harding with the trial court, and the will was admitted to

probate. Ongoing litigation ensued between the Estate and Rhonda and Ryan regarding the will, and as a result of the litigation, the Estate filed the present case with the trial court as personal representative to attempt to reclaim assets for the estate. On March 8, 2013, the Estate filed a complaint against the Trust, seeking to invalidate the Trust and for monetary damages for assets transferred from the estate by Rhonda. Several motions for partial summary judgment were filed and heard by the trial court. Partial summary judgment orders were entered that yielded adjudications on some, but not all, of the issues and as to less than all of the parties. Specifically, orders were issued that awarded the Estate, against Rhonda, a money judgment of $356,231.78 due to a finding that Rhonda committed self-dealing against Reodine. On October 9, 2015, an order was issued setting the issue of the validity of the Trust for a contested bench trial.

[12] A bench trial was held on November 22 and 23, 2016. At the trial, the Estate offered the trial court records from the prior summary judgment proceedings that showed, in part, that Rhonda engaged in self-dealing while acting as Reodine's attorney in fact. Regarding the specific time-period beginning with Rhonda being appointed attorney in fact for Reodine on March 19, 2010, and leading up to the execution of the Trust on June 25, 2010, Mary Lou testified that Rhonda violated her fiduciary duty by transferring to herself or to others who were not creditors of Reodine approximately $122,000.00 by means of at least 37 transactions over the relevant period of ninety-six days that Rhonda had the power of attorney over Reodine. *Tr. Vol. II* at 38; *Pl.'s Ex.* 1. Mary Lou

testified that she had reviewed pertinent bank and other records to arrive at this information. *Id*. at 35-38. At the time of the trial, these transfers made by Rhonda had previously been adjudicated by the trial court in its prior summary judgment order to be unlawful and to be transactions completed by Rhonda without the consent and knowledge of Reodine. *Appellee's App. Vol. VIII* at 26-28. The Estate offered evidence to show that Reodine was a frugal person who made only nominal gifts to family in her lifetime.[1] *Tr. Vol. II* at 50, 53, 59-60.

[13] Pearson testified at trial that, on June 25, 2010, she witnessed the execution of the Trust. *Id*. at 104. Pearson stated that Boulac and Reodine were present at that time and that she observed Reodine review the document and sign it, but did not actually see Reodine read every page of the document. *Id*. at 103-04, 131. Pearson testified that she had met Reodine in the year 2000, at Reodine's husband's business in connection with an auto repair. *Id*. at 86. Pearson testified that, during this meeting in 2000, Reodine had counseled Pearson that she would be better off making a cash payment for the repair services rather than submitting a claim to her insurance company. *Id*. Evidence was presented that the husband's business had closed in 1996 and was not in business in 2000.

---

[1] The Estate did present evidence that, upon the 1995 death of Reodine's spouse, William, Reodine gave a one-time $10,000.00 gift to Mary Lou, Mary Lou's daughter, and to each of Reodine's two step-sons and $2,000.00 in gifts to Rhonda along with yearly Christmas gifts to other family members totaling no more than $1,000.00. *Tr. Vol. II* at 50, 53, 59-60, 61-62. Therefore, from 1995 to 2010 while Mary Lou was Reodine's attorney in fact, Reodine gifted no more than approximately $57,000.00 ($10,000.00 to Mary Lou, plus $10,000.00 to Mary Lou's daughter, plus $20,000.00 to the step-sons plus $2,000.00 to Rhonda plus $15,000.00 annual Christmas gifts).

[14] On January 9, 2017, the trial court issued its findings, conclusions, and order. The trial court reaffirmed, as a final judgment, the money judgment entered on July 31, 2015 against Rhonda in favor of the Estate and declared the Trust to be invalid as a product of undue influence. *Appellant's App. Vol. II* at 32-33. The trial court further ordered the contested assets held in the Trust were to be treated as probate assets in the estate case dealing with Reodine's will. *Id.* The trial court also limited the Estate's recovery of her trial court attorney's fees incurred in this case to recovery in the estate case. *Id.* at 33. The Trust now appeals, and the Estate cross appeals.

## Discussion and Decision

## I.     Validity of the Trust

[15] The Trust argues that the trial court erred in finding the Trust to be invalid and finding that it was a product of undue influence.[2] When a trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review:  first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Supervised Estate of Allender v. Allender*, 833 N.E.2d 529, 533 (Ind. Ct. App. 2005) (citing Freese *v. Burns*, 771

---

[2] The Trust also contends that the trial court erred in denying its motion for involuntary dismissal that was filed at the conclusion of the evidence, arguing that the Estate did not establish any actual evidence of undue influence.  However, because the trial court ruled on the Trust's motion for involuntary dismissal in its order adjudicating the case on the evidence, we do not engage in a separate analysis as to whether there was error in denying the Trust's motion.  "When the trial court rules on a motion for dismissal after all the evidence has been presented, it is simply entering judgment at the conclusion of trial to the court." *Benefit Trust Life Ins. Co. v. Waggoner*, 473 N.E.2d 646, 648 (Ind. Ct. App. 1985).

N.E.2d 697, 700-01 (Ind. Ct. App. 2002), *trans. denied*), *trans. denied*. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Challengers must establish that the trial court's findings are clearly erroneous. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo. *Id.*

[16] The Trust contends that the trial court erroneously found that the Trust was invalid and was the product of undue influence. The Trust asserts that the common-law presumption of undue influence did not apply. It further maintains that the Estate failed to make any showing of the "actual exercise of undue influence or any implication of undue influence." *Appellant's Br.* at 10. The Trust also argues that the trial court's reliance on the transactions by Rhonda that were previously determined to be self-dealing was erroneous because the transactions were not relevant to the question of whether the Trust was valid. Therefore, the Trust claims that the trial court clearly erred when it found undue influence existed.

[17] Undue influence is defined as the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. *In re Estate of Compton*, 919 N.E.2d 1181, 1185-86 (Ind. Ct. App.

2010) (quotations omitted), *trans. denied*. Certain legal and domestic relationships raise a presumption of trust or confidence as to the subordinate party on the one hand and a corresponding influence as to the dominant party on the other. *Id*. (citing *Hamilton v. Hamilton*, 858 N.E.2d 1032, 1036 (Ind. Ct. App. 2006)*, trans. denied*). When transactions occur between a dominant and subordinate party that benefit the dominant party, the law imposes a presumption that the transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and thus void. *Id*. at 1186. To rebut the presumption of undue influence, a dominant party must demonstrate to the trial court by clear and unequivocal proof that the transaction in question was made at arm's length and is therefore valid. *Id*.

[18] Here, Reodine executed a power of attorney in March 2010 designating Rhonda as her attorney in fact. A power of attorney creates a fiduciary relationship between a principal and her agent, or attorney in fact. Id. However, Indiana Code section 30-5-9-2 provides:

> (a) An attorney in fact who acts with due care for the benefit of the principal is not liable or limited only because the attorney in fact:
>
> (1) also benefits from the act;
>
> (2) has individual or conflicting interests in relation to the property, care, or affairs of the principal; or
>
> (3) acts in a different manner with respect to the principal's and the attorney in fact's individual interests.

(b) A gift, bequest, transfer, or transaction is not presumed to be valid or invalid if the gift, bequest, transfer, or transaction:

(1) is:

(A) made by the principal taking action; and

(B) not made by an attorney in fact acting for the principal under a power of attorney; and

(2) benefits the principal's attorney in fact.

In *Compton*, this court held that "[a] presumption of undue influence is now conditioned upon the attorney in fact's actual use of the power of attorney to effect the questioned transaction for his or her benefit." 919 N.E.2d at 1187. "The benefiting attorney in fact is freed from the presumption of undue influence so long as the power of attorney is unused in the questioned transaction." *Id*.

[19]  In the *Compton* case, this court found no undue influence existed where the power of attorney was not used in the transactions at issue even where the attorney in fact benefited from the transaction. *Id*. at 1188. There, the principal personally signed the contracts at issue, and prior to signing them, he had inquired into selling his farmland by asking a bank president about real estate values and by discussing with a friend whether to sell his farmland and change his will. *Id*. Our court concluded that the common-law presumption of undue

influence did not apply because the principal knew the consequences of his actions and took action pursuant to Indiana Code section 30-5-9-2(b). *Id.*

[20] We find the present case to be distinguishable from *Compton*. Here, Rhonda benefited from the Trust as a beneficiary, which was a testamentary distribution that differed from that of the previously-executed will, where Rhonda was not a beneficiary. However, unlike in *Compton*, Rhonda signed the Trust as Trustee of the Trust, and at the time that she signed the document, Rhonda still held the position of attorney in fact for Reodine. There was also no testimony that Reodine had ever previously mentioned a desire to execute a trust or had ever sought advice from an attorney about doing so. Additionally, evidence was presented that Rhonda engaged in self-dealing while acting as Reodine's attorney in fact. Specifically, from the time that Rhonda was appointed attorney in fact for Reodine on March 19, 2010, until the date the Trust was executed on June 25, 2010, evidence showed that Rhonda violated her fiduciary duty by transferring to herself or to others who were not creditors approximately $122,000.00 of Reodine's money by means of at least 37 transactions over the relevant period of ninety-six days. *Tr. Vol. II* at 38; *Pl.'s Ex.* 1. At the time of the trial, the trial court, in a summary judgment order, already had found these transfers to be unlawful and to be transactions completed by Rhonda without the consent and knowledge of Reodine. *Appellee's App. Vol. VIII* at 26-28. Evidence was also presented that historically Reodine was a frugal person who made only nominal gifts to family in her lifetime and that she was unable or unwilling to handle tasks such as hiring an

attorney. *Tr. Vol. II* at 50, 53, 59-60. We conclude that, based on the evidence, the trial court could conclude that Rhonda used her power of attorney in the execution of the Trust, which was for her benefit. Therefore, the presumption of undue influence applied.

[21] To rebut the presumption of undue influence, a dominant party, here, Rhonda, must demonstrate to the trial court by clear and unequivocal proof that the transaction in question was made at arm's length and is therefore valid. *Compton*, 919 N.E.2d at 1186. The Trust points to the testimony of Pearson to rebut the presumption. At trial, Pearson testified that she witnessed the execution of the Trust, which was done in the sunroom of Sterling House, while Pearson was walking in and out of the room. Pearson did not read the Trust and testified that she believed that Reodine understood what she was doing in executing the Trust. *Tr. Vol. II* at 104. In its order, the trial court found that Pearson was not a credible witness. *Appellant's App. Vol. II* at 31. On appeal, we do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Allender*, 833 N.E.2d at 533. The Trust has failed to rebut the presumption of undue influence. We, therefore, conclude that the trial court did not err in finding that the Trust was invalid and that the assets held in the Trust should be treated as probate assets.

## Cross-Appeal Issues

## II.    Constructive Fraud

[22]    On cross-appeal, the Estate contends that the trial court erred in not making an express finding that the Trust was invalid as constructive fraud.  As we have already concluded that the trial court did not err in its determination that the Trust was invalid because it was the product of undue influence exerted by Rhonda against Reodine, we find that this contention by the Estate is moot.  An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome, or when no effective relief can be rendered to the parties.  *Aguayo v. City of Hammond Inspection Dep't*, 53 N.E.3d 551, 555 (Ind. Ct. App. 2016).  We decline to address this constructive fraud issue because, here, the trial court made a determination that the Trust was invalid, and we have affirmed that determination.  We can, therefore, render no effective relief on this issue.  *Id*. at 555.

## III.   Trial Attorney's Fees

[23]    The Estate argues that the trial court abused its discretion in denying her petition for attorney's fees based on what she characterizes as the Trust's continued litigation of claims that became frivolous, unreasonable, or groundless.  Indiana Code section 34-52-1-1 reads in pertinent part:

> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

(c) The award of fees under subsection (b) does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts. However, the prevailing party may not recover the same attorney's fees twice.

[24] Our Supreme Court has observed that the legal process "must invite, not inhibit, the presentation of new and creative argument" and, as such, statutes authorizing the recovery of attorney's fees "must leave breathing room for zealous advocacy and access to the courts to vindicate rights." *Mitchell v. Mitchell*, 695 N.E.2d 920, 925 (Ind. 1998). Being sensitive to such considerations, a trial court must view "with suspicion" a party's assertions that his opponent has raised a frivolous, unreasonable, or groundless claim or defense. *Id*. Broadly stated, the statute authorizing an award of attorney's fees for frivolous lawsuits "strikes a balance between respect for an attorney's duty of zealous advocacy and the important policy of discouraging unnecessary and unwarranted litigation." *Id*. at 924 (citation and internal quotation marks omitted).

[25]     A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Waterfield v. Waterfield*, 61 N.E.3d 314, 335 (Ind. Ct. App. 2016), *trans. denied*. A claim or defense is unreasonable if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that claim or defense was worthy of litigation. *Id*. at 335-36. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. *Id*. at 336. A trial court is not required to find an improper motive to support an award of attorney's fees; rather, an award may be based solely upon the lack of a good faith and rational argument in support of the claim. *Id*. "A claim or defense is not groundless or frivolous merely because the party loses on the merits." *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 655 (Ind. Ct. App. 2012).

[26]     Here, although the trial court eventually determined that the Trust was invalid, the Estate first sought several motions for summary judgment against the Trust, which were denied. After being presented with arguments by the Estate via three summary judgment motions, the trial court found that the Estate failed to show the absence of material issue of fact as to whether the Trust was created under use of the power of attorney granted to Rhonda. *Appellee's App. Vol. IX* at 14-15. Instead, the trial court required a bench trial, at which both sides were

able to fully present their evidence, thus enabling the trial court to make its final determination regarding whether the Trust was valid. Therefore, the Trust lost on the merits, but this loss did not render its claims frivolous, unreasonable, or groundless. We conclude that the trial court did not abuse its discretion when it did not award the Estate attorney's fees against Ryan directly.

## IV. Appellate Attorney's Fees

[27] The Estate also asserts that it is entitled to appellate attorney's fees. Indiana Appellate Rule 66(E), provides, in part, "The Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney's fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Wressell v. R.L. Turner Corp.*, 988 N.E.2d 289, 298-99 (Ind. Ct. App. 2013), *trans. denied*. Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id*. at 299.

[28] Indiana appellate courts have formally categorized claims for appellate attorney's fees into "substantive" and "procedural" bad faith claims. *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and

arguments are utterly devoid of all plausibility. *Id.* Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.* at 346-47.

[29] For the same reasons as expressed in denying the Estate's issue of trial court attorney's fees, we cannot say that the Trust's claims are utterly devoid of plausibility and the product of substantive bad faith. We also do not find that the Trust's briefs flagrantly disregarded the requirements of the appellate rules or otherwise constituted procedural bad faith. We, therefore, decline to award the Estate appellate attorney's fees.

[30] Affirmed.

[31] Najam, J., and Brown, J., concur.